UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

BRANDI N. GOODPASTER, )
)
Plaintiff, )
)
vs. )
) No. 1:13-cv-00864-SEB-DKL
CAROLYN W. COLVIN Acting )
Commissioner of the Social Security )
Administration, )
)
Defendant. )

## **REPORT AND RECOMMENDATION**

Plaintiff Brandi N. Goodpaster ("Goodpaster") requests judicial review of the decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration (the "Commissioner"), denying Goodpaster's application for supplemental security income ("SSI") disability benefits. The Honorable Sarah Evans Barker, District Judge, designated this Magistrate Judge, under Fed. R. Civ. P. 72 and 28 U.S.C. § 636(b)(1), to issue a report and recommendation on the request. [Dkt. 6.] For the reasons set forth below, the undersigned recommends the Commissioner=s decision be **AFFIRMED**.

### I. **BACKGROUND**

**A. Procedural History**

Goodpaster filed an application for Supplemental Security Income ("SSI") on January 25, 2010, alleging an onset of disability of March 25, 1999. [Dkt. 13-2 at 13.]

Goodpaster's application was denied initially on June 2, 2010, and upon reconsideration on September 28, 2010. *Id.* Goodpaster requested a hearing, which was held on January 4, 2012, before Administrative Law Judge Blanca B. de la Torre ("ALJ"). The ALJ denied Goodpaster' application on February 23, 2012. [Dkt. 13-2 at 10.] The Appeals Council denied Goodpaster' request for review of the ALJ's decision on March 27, 2013, making the ALJ's decision final for purposes of judicial review. [Dkt. 13-2 at 2.] Goodpaster filed her Complaint with this Court on May 28, 2013. [Dkt. 1.]

### B. Factual Background and Medical History

Goodpaster was born on April 19, 1976, and was 35 years old at the time of the hearing. She has past relevant work as fast food worker, sales associate, clerical worker and warehouse worker. Goodpaster testified that she last worked in 2004 in the drive-thru at Wendy's. She alleges an onset of disability date of March 25, 1999.

The ALJ found Goodpaster suffers from the severe impairments of residual effects of traumatic brain injury and left femur and pelvic fractures (sustained in a motor vehicle accident in March of 1999), bipolar disorder and polysubstance abuse in sustained remission. As Goodpaster and the ALJ thoroughly summarized the medical records, the Court will only cite to the portions relevant to the issues on which Goodpaster requests review.

## II. LEGAL STANDARDS

### A. Standard for Proving Disability

To be eligible for SSI and DIB, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To evaluate a disability claim, an ALJ must use the following five-step inquiry:

> Step One: Is the claimant currently employed;
>
> Step Two: Does the claimant have a severe impairment or combination of impairments;
>
> Step Three: Does the claimant's impairment meet or equal any impairment listed in the regulations as being so severe as to preclude substantial gainful activity;
>
> Step Four: Can the claimant perform his past relevant work; and
>
> Step Five: Is the claimant capable of performing any work in the national economy?

20 C.F.R. §§ 404.1520. *See also Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the SSA has the burden at Step Five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience and functional capacity. 20 C.F.R. § 404.1560 (c)(2).

### B. Standard for Judicial Review

An ALJ=s decision will be upheld so long as the ALJ applied the correct legal standard, and substantial evidence supported the decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Id.* (internal quotation omitted). This limited scope of judicial review follows the principle that Congress designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ, we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th 2004). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of this conflict. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *O-Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010) (citation omitted).

### III. DISCUSSION

Goodpaster claims the ALJ committed various errors that require reversal of the Commissioner's decision. Specifically, Goodpaster asserts the ALJ erred by: (1) failing to adequately consider whether Goodpaster's impairments met or equaled a Listing; (2) failing to summon a medical advisor to determine whether Goodpaster's combined

4

impairments met or medically equaled a Listing; (3) negatively assessing Goodpaster's credibility; and (4) failing to account for Goodpaster's limitations in concentration, persistence and pace at Step Five.

### A. Combined Mental Impairments

Goodpaster first argues that the ALJ's denial decision was in error because "substantial medical-psychiatric evidence" established that her combined mental impairments rendered her totally disabled. [Dkt. 15 at 11.] In support of this argument, Goodpaster asserts the ALJ improperly rejected GAF assessments of 40 as evidence of disability. Such a GAF, by definition, means the person is "unable to work," Goodpaster argues. [Dkt. 22 at 3.] The Court disagrees. It is often noted that GAF scores "are useful for planning treatment" but they do not "reflect the clinician's opinion of functional capacity." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). As the Seventh Circuit has noted, "a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

Goodpaster attended mental health counseling two times during the alleged disability period: on August 25, 2011 and on September 1, 2011. On each of these occasions, Goodpaster was assessed a GAF of 40. The ALJ not only cited these scores, she compared the records from these two visits to Goodpaster's other mental health records. The ALJ noted that during the first visit, Goodpaster reported she was on probation for battery and drug related offenses and she could not afford her

medication. Goodpaster also reported hallucinations, suicidal ideation and short term memory problems, all of which were inconsistent with reports to other health care providers. The ALJ concluded that the GAF scores appeared to be based upon Goodpaster's subjective complaints rather than clinical findings. Goodpaster argues on Reply that the August 25, 2011, GAF score was based upon a Mental Status Examination conducted by a psychologist. The record Goodpaster cites in support of this argument, however, is a portion of the intake questionnaire. As the ALJ concluded, there is no evidence the GAF was based upon anything other than Goodpaster's self-reported symptoms during the intake examination.

Based upon the medical record as a whole, the ALJ found Goodpaster's mental impairments did not rise to the level of severity required to be considered "disabled" under a Listing. The Court finds there is substantial evidence to support that conclusion.

### B. Medical Advisor

Goodpaster next asserts the ALJ was required to summon a medical advisor to testify as to whether her combined impairments met or equaled a Listing, such as 12.04.[1] He further argues that the ALJ should not have relied upon the opinions of the state agency physicians because they pre-dated other medical evidence in the record. The Court disagrees with both of Goodpaster's assertions.

---

1 In her initial brief, Goodpaster incorrectly references an orthopedist and Listing 1.02A. She corrects this error on Reply.

An ALJ must rely on a medical expert's opinion when finding a claimant does not meet or equal a listed impairment. SSR 96–6p. In some instances, this requires the ALJ to hear additional evidence from a medical examiner. *See Green v. Apfel,* 204 F.3d 780, 781 (7th Cir. 2000) (noting that the ALJ incorrectly made medical conclusions instead of consulting a medical examiner). However, when the medical evidence in the record is sufficient to make a decision, the ALJ may rely on it alone. *Simila v. Astrue,* 573 F.3d 503, 516 (7th Cir. 2009).

Here, the ALJ relied upon the report of a state agency physician that found Goodpaster was capable of completing simple, repetitive tasks. *See Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004) (finding that disability forms completed by state agency physicians conclusively establish that a physician designated by the agency has given consideration to the question of medical equivalence). Goodpaster attempts to rely upon *Barnett v. Barnhart,* 381 F.3d 664 (7th Cir. 2004), but her reliance is misplaced because the ALJ in *Barnett* did not consult a medical expert at all or rely on a signed Disability Determination and Transmittal Form. *Barnett,* 381 F.3d at 670–71. Instead, the ALJ based his findings on his own layman opinion. *Id.* at 671. By contrast, the ALJ in this present case grounded her findings in medical opinions from a state agency physician as well as other physicians who treated Goodpaster.

Goodpaster also asserts, without explanation, that had the state agency physician reviewed four specific medical documents the physician presumably "would have reasonably determined she was totally disabled." [Dkt. 15 at 15.] This is nothing more than speculation on Goodpaster's part. She offers no explanation as to how or why

7

these documents establish disability. Two of the documents are the GAF assessments, which the Court has already found do not establish disability. The remaining two documents are a report of primary care treatment by Dr. Freije dated November 10, 2010 and a functional capacity evaluation dated September 8, 2010. Dr. Freije's report notes that Goodpaster had "passed out" on two occasions. Goodpaster reported to Dr. Freije that the feelings of nausea and unsteadiness resolved after eating food. The functional capacity evaluation detailed physical restrictions for Goodpaster, such as that she is unable to lift more than 25 pounds. The Court fails to see, and Goodpaster fails to argue, why the opinion of the state agency physician would turn on these documents. Accordingly, the Court finds that the ALJ did not err in holding a hearing without summoning a medical advisor to testify in this case. The Court finds the record substantially supports the ALJ's determination that Goodpaster did not meet or medically equal a Listing.

### C. Credibility of Goodpaster

Goodpaster also asserts the ALJ's failure to make an express credibility determination is contrary to SSR 96-7p. Goodpaster claims the ALJ's decision "contains no language discussing her credibility." [Dkt. 15 at 18.] Again, the Court disagrees. In assessing a claimant's credibility when the allegedly disabling symptoms are not objectively verifiable, an ALJ must first determine whether those symptoms are supported by medical evidence. *See* SSR 96–7p, 1996 WL 374186, at *2; *Arnold v. Barnhart,* 473 F.3d 816, 822 (7th Cir. 2007). If not, SSR 96–7p requires the ALJ to "consider the entire case record and give specific reasons for the weight given to the

individual's statements." *Simil v. Astrue,* 573 F.3d 503, 517 (7th Cir. 2009) (quoting SSR 96–7p). The ALJ "should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and 'functional limitations .' " *Simila,* 573 F.3d at 517 (quoting 20 C.F.R. § 404.1529(c) (2)-(4)).

Contrary to Goodpaster's assertion, the ALJ not only discussed her credibility determination, she offered multiple examples of discrepancies between Goodpaster's testimony and the evidence. For example, while Goodpaster claims her inability to concentrate and short-term memory issues prohibit her from working, Dr. Berry's examination revealed no significant problems with concentration or short-term memory. Dr. Berry also noted malingering features such as an inability to recall who she is and vision in only black and white. The ALJ further noted that Goodpaster was dishonest with health care providers about her history of substance abuse, even reporting to Dr. Freije, her primary care physician, that she had never used illegal drugs. Although Goodpaster was involved in serious motor vehicle accident in 1999, the ALJ observed that the "evidence subsequent to the MVA and the filing of the claim is sparse, and mostly limited to the history of polysubstance abuse." [Dkt. 13-2 at 19.] Finally, the ALJ observed Goodpaster during the hearing and noted "she was able to follow the proceedings without difficulty, and that she responded to questions in an appropriate manner."

An ALJ is in the best position to determine the credibility of witnesses, and the Court must review that determination deferentially. *Sims v. Barnhart,* 442 F.3d 536, 538

(7th Cir. 2006). The Court may only overturn a credibility determination if it is patently wrong. *Prochaska v. Barnhart,* 454 F.3d 731, 738 (7th Cir. 2006). Because the ALJ provided specific reasons for her credibility determination, and those reasons are supported by the record, the credibility determination will not be overturned.

### D. Step Five and RFC

Goodpaster's final argument for the reversal of the ALJ's decision challenges the hypothetical question the ALJ posed to the Vocational Expert ("VE"). Specifically, Goodpaster asserts that the hypothetical failed to account for Goodpaster's deficiencies in social functioning and concentration, persistence or pace. He references the "unskilled work" limitation and the Seventh Circuit's stance that limiting claimants to "simple, repetitive tasks" is insufficient to account for limitations in concentration, persistence and pace. *See O'Connor–Spinner v. Astrue,* 627 F.3d 614 (7th Cir. 2010).

In *O'Connor–Spinner,* the Seventh Circuit explained that "moderate difficulties normally should be reflected in" the RFC and corresponding hypotheticals to the VE. *O'Connor–Spinner,* 627 F.3d at 620. In that case, the ALJ determined that the claimant's depression caused moderate limitations in concentration, persistence and pace that should have been described to the VE. Here, the ALJ did just that. Specifically, the ALJ noted in her RFC and hypothetical that Goodpaster "is able to understand, remember and carry out short, simple and repetitive instructions. She is able to sustain attention and concentration for 2-hour periods at a time, and for 8 hours in the workday. . . requires an occupation with a set routine and procedures, and few changes during the workday. Finally, she cannot perform work requiring unusual work stresses or

10

involving fast-paced production work." [Dkt. 13-2 at 17-18.] As required by *O'Connor-Spinner*, the ALJ incorporated explicit language into the hypothetical addressing Goodpaster's documented mental limitations. Therefore, the Court finds the ALJ's RFC and corresponding hypothetical questions posed to the vocational expert were sufficiently supported by the record and not in error.

## IV. <u>CONCLUSION</u>

The standard for disability claims under the Social Security Act is stringent. The Act does not contemplate degrees of disability or allow for an award based on partial disability. *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985). Furthermore, the standard of review of the Commissioner's denial of benefits is narrow. The Court reviews the record as a whole, but does not re-weigh the evidence or substitute its judgment for the ALJ's. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). The Court must uphold a decision where, as here, it is supported by substantial evidence in the record. As the Court cannot find a legal basis to overturn the ALJ's determination that Goodpaster does not qualify for disability benefits, the undersigned recommends the Commissioner's decision be **AFFIRMED**.

## Notice Regarding Objections

Within fourteen days of being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection might result in forfeiture of the right to *de novo*

determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**The parties should not expect extensions of time to file either objections or responses. No replies will be allowed.**

**DONE this date**: 07/14/2014

*[signature]*
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana


Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov